# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

MARCUS P. GREEN                                           PLAINTIFF

v.                                            CIVIL ACTION NO. 5:18-CV-P67-TBR

SGT. JAMES STOGNER III *et al.*                                   DEFENDANTS

## MEMORANDUM OPINION

This is a *pro se* civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Marcus P. Green leave to proceed *in forma pauperis*. This matter is before the Court for screening of Plaintiff's complaint (DN 1) and amended complaint (DN 16) pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, this action will be dismissed.

### I. SUMMARY OF COMPLAINT AND AMENDED COMPLAINT

Plaintiff was formerly incarcerated at Green River Correctional Complex (GRCC). He brings this action against four GRCC officials in their official and individual capacities - Sergeant James Stogner III, Lieutenant Donald Young, Lieutenant Charles Basting, and Warden DeEdra Hart.[1]

Plaintiff claims that Defendants violated his constitutional rights in regard to two misconduct charges and convictions. Plaintiff first alleges that on December 21, 2017, Defendant Stogner filed a "fabricated" disciplinary report against him charging him with "gang activity." Plaintiff states that the "physical evidence (camera footage)" reviewed by Defendant Stogner does not show that Plaintiff was present during the physical altercation between inmates that formed the basis of the charge against him. Plaintiff claims that this action violated his

---

[1] Although Plaintiff only sued Defendants in their individual capacities in his original complaint, he indicates that he is also suing Defendants in their official capacities in his amended complaint.

Fourteenth Amendment rights to "due process and equal protection." Plaintiff contends that Defendant Stogner further violated his rights on the same date by charging him with "inciting a riot or rioting." Plaintiff claims that this charge stems from an incident which occurred approximately 10 minutes after the first altercation when Plaintiff and his cellmate were attacked by the same individuals who were involved in the first altercation. Plaintiff writes that during this altercation his cellmate was stabbed with a knife and he was struck in the face. Plaintiff claims that Defendant Stogner violated his Fourteenth Amendment "due process" rights when he gave "false and misleading evidence/statements . . . saying that [Plaintiff] organized a riot on himself, and on his cell mate . . . But in truth [Plaintiff] was a unwilling participant in a disturbance that left his face bruised and [his] cellmate . . . hospitalized."

Plaintiff claims that Defendant Young violated Plaintiff's Fourteenth Amendment "right to due process" when he failed to investigate the claim that Plaintiff was involved in gang activity. Plaintiff alleges that if Defendant Young had conducted a proper investigation and had not been biased against him, he would have learned that Plaintiff was first working in the kitchen and then on the phone during the altercation that led to Plaintiff being charged with "gang activity." Plaintiff attaches phone records and a monthly pay report to the complaint which Plaintiff contends support his account of his whereabouts during the first altercation. In his amended complaint, Plaintiff further alleges that Defendant Young "added his signature to the investigation fraudulently making it look as if his investigation was complete before the ruling made at the Adjustment Committ[ee]" and "misused his access to Kentucky KOM's to alter the entire disciplinary report."

Plaintiff alleges that Defendant Basting conducted the Adjustment Committee Hearing on January 9, 2018, wherein Plaintiff was ultimately convicted of the two charges against him.

2

Plaintiff claims that Defendant Basting violated his rights by "refus[ing] to let [Plaintiff] present his defense by talking over [Plaintiff]." Plaintiff also contends that Defendant Basting admitted the "gang activity" charge against him was a "stacked write up" but that he had to do his job and give Plaintiff the same punishment as the 11 other inmates involved. Plaintiff also alleges that during his hearing on the "rioting" charge, Defendant Basting refused to consider any of Plaintiff's evidence or "to even review the footage." Plaintiff also states that when he attempted to obtain the tape of the hearings on the two charges, he was notified that Defendant Basting had "destroyed the recordings." Plaintiff suggests that Defendant Basting destroyed the records "to cover up [his] misconduct of not allowing [Plaintiff] to defend himself." Plaintiff also contends that Defendant Basting violated his due process rights "by taking him to court call (adjustment hearing) without the investigator's signature" on the investigative report.

Finally, Plaintiff claims that Defendant Hart violated his "Fourteenth Amendment Rights" by "failing to investigate any of the truthful claims that were presented to her . . . [and by stating] that Plaintiff was involved when clearly he wasn't . . . and that there was/were no due process violations, rubber stamping all of the failure to investigate, the false accusations . . ." Plaintiff also claims that Defendant Hart's conduct caused "[Plaintiff] to endure cruel and unusual punishment for something he did not do in form of segregation, that violated his Eighth Amendment." Plaintiff also claims that Defendant Hart violated "his right to equal protection under the law . . . in order to cover up the failure in security that led to Plaintiff and [his cellmate] being assaulted." Plaintiff contends that he, his cellmate, and the victim of the first attack were all assaulted by the "same people" and that "if security was upholding their duties, those same people that was involved [in the first assault] never would have been able to continue assaulting other individuals."

Plaintiff concludes his complaint as follows:

> All four [Defendants] acted in this manner to conceal their fault. Allowing the people that assaulted [the victim of the first altercation] to assault 2 more people. Which [Plaintiff's cellmate] was stabbed and [Plaintiff] was nearly knocked unconscious. If they acted and apprehended the individuals from [the first altercation]; [Plaintiff] would not have been assaulted. Instead they wrote [Plaintiff] up as being involved in gang activity and organizing an assault on himself to not be liable for their action, under the vail that there was a riot at GRCC. This violated [Plaintiff]'s 14th Amendment and 8th Amendment to equal protection under the law, and also cruel and unusual punishment.

The disciplinary reports submitted by Plaintiff show that he received 30 days in disciplinary segregation for the "gang activity" conviction and 30 days in disciplinary segregation and 180 days of "Non-Restorable [Good-Time] Days Lost" for the "inciting to riot or rioting" conviction. Plaintiff, however, seems to indicate that he is still in segregation. For example, he writes that one of his injuries is "disciplinary segregation unit/special management unit where they are still forced to abide by all the rules of disciplinary seg. for 90 day cycles." And, in addition to compensatory and punitive damages, in the relief section of his complaint, he requests "release from administrative control status and segregation in special management unit." He also seeks the removal of Defendants from their positions and "release everyone involved and expunge there records of rioting d/ reports."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

4

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to

the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Fourteenth Amendment Due Process Claims

Plaintiff alleges that Defendants violated his right to due process by, among other things, filing "fabricated" disciplinary reports against him, failing to properly investigate the claims in the reports, not allowing him to speak and not reviewing all the evidence at his misconduct hearing, and affirming the misconduct convictions on appeal.

A prisoner's ability to challenge a prison misconduct investigation and conviction depends on whether the actions implicated any liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Id.* at 487.

With regard to Plaintiff's claims based on his placement in disciplinary segregation, courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). The Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (holding 61 days in segregation is not atypical or significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998) (holding two years of segregation while the inmate was investigated for the murder of a prison guard in a riot not an atypical deprivation); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (holding prisoner's continued confinement in administrative segregation for eight additional months after a status review committee accepted a recommendation that he be returned to the general population did not deprive him of a protected liberty interest). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (holding 13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Here, although the records submitted by Plaintiff show that he that he received 30 days in disciplinary segregation for the "gang activity" conviction and 30 days in disciplinary

7

segregation for the "inciting to riot or rioting" conviction to be served concurrently, he seems to allege that he has been in segregation since the date of his hearing – which was over four months ago. Even if the Court construes the complaint as alleging that Plaintiff has been in segregation for over four months, it does not contain any allegations concerning the nature or conditions of this segregation. As such, the Sixth Circuit jurisprudence cited above suggests that his placement in segregation fails to constitute an "atypical and significant" hardship warranting the protections of due process. *See also Dunbar v. Barone*, 487 F. App'x 721, 724-725 (3d Cir. 2012) (holding 18 months in segregation did not amount to atypical and significant hardship); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding seven months in disciplinary confinement did not implicate a protected liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 705-07 (3d Cir. 1997) (holding 15 months in segregation was not an atypical and significant hardship); *Ingersoll v. Phelps*, No. 17-cv-00046-NJR, 2017 U.S. Dist. LEXIS 17180, at *8-9 (S.D. Ill. Feb. 7, 2017) (finding three months in disciplinary segregation not sufficient to trigger due process protections). Accordingly, the Court will dismiss Plaintiff's due process claims based upon the misconduct proceedings which resulted in his placement in disciplinary segregation for failure to state a claim upon which relief may be granted.

However, the records submitted by Plaintiff also show that, in addition to being placed in disciplinary segregation for 30 days based on the "inciting to riot or rioting" conviction, he also lost 180 "non-restorable [good-time] days." Because the loss of earned good-time credits affects the length of an inmate's prison sentence, Plaintiff has a protected liberty interest in this regard. *Sandin*, 515 U.S. at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Nonetheless, there is still a barrier to his § 1983 due process claim. In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court held:

8

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .

*Id.* at 486-87. Thus, if a ruling on a claim would necessarily render a plaintiff's continued confinement invalid, the claim must be dismissed because it is not cognizable until the challenged confinement has been remedied by some other process. *Id.* at 489.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison administrative proceedings, such as the one complained of by Plaintiff in this instance. The Supreme Court subsequently clarified that a prisoner must show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration of his sentence has been affected. *See Muhammad v. Close*, 540 U.S. 749 (2004). To establish a "favorable termination," Plaintiff must first successfully challenge the validity of the conviction resulting in the loss of good-time credits by filing a habeas corpus action following the exhaustion of state-court remedies. If, and only if, Plaintiff's underlying disciplinary conviction for "inciting to riot or rioting" is invalidated may he then bring a civil action for the alleged harm caused by the acts which resulted in his disciplinary conviction and punishment. Thus, Plaintiff's Fourteenth Amendment due process claim based upon the loss of good-time credits must also be dismissed at this time for failure to state a claim upon which relief may be granted.

### B. Fourteenth Amendment Equal Protection Claim

Plaintiff also summarily claims that Defendants' alleged actions violated his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim,

9

a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). The Supreme Court has also recognized what is referred to as "class-of-one' equal protection claims in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Servs.,* 679 F.3d 433, 441 (6th Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). However, because Plaintiff makes no allegations that would state a claim under either theory, Plaintiff's equal protection claim must be dismissed for failure to state a claim upon which relief may be granted.

**C. Eighth Amendment Cruel and Unusual Punishment Claim**

Finally, Plaintiff claims that Defendants' actions violated his rights under the Eighth Amendment. The Court can no discern no such violation in Plaintiff's allegations. The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Indeed, the Sixth Circuit has held that "[b]ecause placement in segregation is a routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment violation." *Harden-Bey v. Rutter*, 524 F.3d at 795 (holding allegations of confinement in administrative segregation for "three years and running" failed to state an Eighth Amendment claim) (citation omitted). Thus, the Court will also dismiss this claim for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter a separate Order dismissing this action consistent with this Memorandum Opinion.

Date:

cc: Plaintiff, *pro se*
 Defendants
4413.011